BROOKS, NEELY & CO. *v.* LOWENSTEIN.

*(Jackson.* August 21, 1895.)

1. EVIDENCE. *Declarations of party in possession are part of res gestæ.*

Declarations of a person in possession of property, explaining and characterizing that possession, and showing in what capacity he holds, whether as owner, solely or jointly, or as agent, tenant, or trustee of another, and the like, are regarded as part of the *res gestæ* of the possession, and when that or the ownership of the property are under inquiry, such declarations are received as explanatory of the possession. (*Post, pp. 266–268.*)

Case cited and approved: 95 Am. Dec., 70, and note.

2. CHARGE OF COURT. *As to commingling of goods, erroneous.*

An instruction that makes the rights of the parties, in a case of wrongful and indistinguishable commingling of goods, turn upon the relative quantities or values that each may have in the common mass, is erroneous. The party through whose fault or negligence the wrongful mixture occurs, must, in such case, bear the loss and forfeit his goods. (*Post, pp. 268, 269.*)

Cases cited and approved: 39 N. H., 557, 563; 19 Wis., 126; 22 Wis., 539; 26 Wis., 74; 20 Maine, 287; 10 Mich., 433; 30 Maine, 370.

3. PRINCIPAL AND AGENT. *Attitude of agent's creditors.*

The creditors of an agent who has wrongfully commingled his goods with those of his principal, and thereby forfeited them, cannot subject the agent's goods, or their value, to payment of their debts. (*Post, pp. 269, 270.*)

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, Judge.

METCALF & WALKER for Brooks, Neely & Co.

L. and E. LEHMAN for Lowenstein.

McALISTER, J. This suit was brought by B. Lowenstein & Bros. to recover the value of a certain stock of merchandise alleged to have been wrongfully seized as the property of one J. C. Long, under an attachment sued out by Brooks, Neely & Co. in the Circuit Court of the United States for the Eastern District of Mississippi. The defendants, Brooks, Neely & Co. pleaded the general issue. There was a trial in the Circuit Court of Shelby County, before Judge L. H. Estes and a jury, resulting in a judgment in favor of plaintiffs for the sum of two thousand dollars. Brooks, Neely & Co. appealed, and have assigned errors. There was evidence on the trial below tending to show that, about November, 1889, one J. C. Long was engaged in a general merchandise business in the State of Mississippi, with one store at Marietta, in Prentiss County, and another at Walker's Hall, in Itawamba County. Long was largely indebted to various creditors, and, among others, to the plaintiffs, B. Lowenstein & Bro., and to the defendants, Brooks, Neely & Co. It further appears that, on November 23, 1889, B. Lowenstein & Bro., Robson, Block & Co., J. M. Goodbar & Co., Des Jardines, Miller & Co., and Mack Stadler &. Co. sued out attachments in the State Courts of Mississippi against the property of the said J. C. Long, and these attachments were levied on the stock of

merchandise in the two stores. A large quantity of the property attached being perishable, an agreement was reached between J. C. Long, the common debtor, and all the attaching creditors, by which the Sheriff was directed to sell both stocks of merchandise at public vendue.

It appears that all the parties interested signed the agreement and consented to the sale. Two of the attaching creditors—Goodbar & Co. and B. Lowenstein & Bros.—entered into a further agreement, by the terms of which they were to purchase both stocks at the sale and pay off the claims of prior attaching creditors. The purchase, under this agreement, was to be made in the name of B. Lowenstein & Bros., who were to discharge such priorities, and, as the goods were afterwards sold, to prorate the net proceeds on the several debts which Long owed them. It appears that J. C. Long, the debtor, made no defense to the attachment suits, but consented to the sale of the goods, and to the application of the proceeds to the payment of the claims of the prior attaching creditors. At the Sheriff's sale, B. Lowenstein & Bros. not only purchased the goods, but likewise the book accounts due Long. There is proof tending to show that Lowenstein & Bros. left the stock in the hands of one Anthony, as their agent, to sell the goods at private sale, and that J. C. Long, the debtor, was employed by them to collect the accounts remaining due on his books. It appears that Anthony remained in charge of the stock from De-

cember 4, 1889, until Christmas of that year, when he was taken sick, and turned over the business to J. C. Long to manage it, as the agent of B. Lowenstein & Bros. It is shown that Long, after taking charge of the store, as the successor of Anthony, made remittances to B. Lowenstein & Bros. to the amount of $1,440, that of this sum $600 were proceeds of sale of stock, and the balance was collected on book accounts. Long remained in possession of the stock from December 25, 1889, until February 2, 1890, when it was attached by the defendants, Brooks, Neely & Co., in the Federal Court of Mississippi, as the property of J. C. Long, for an alleged indebtedness of $3,500. The contention of Brooks, Neely & Co. is, that the greater portion, if not all, of the stock remaining on hand, was the property of the said J. C. Long, and subject, therefore, to their attachment. It was claimed by Brooks, Neely & Co. that, on the night of November 22, 1889, preceding the attachment of B. Lowenstein & Bros., J. C. Long, secretly and fraudulently, removed from his storehouse about $2,000 worth of merchandise, and concealed it in the house of his clerk, one Clem Cummings, and that said goods were not found or levied on under said attachment; that, after the attachments were levied by B. Lowenstein & Bros. and others, on the remainder of the stock left in the store after such secret removal, and after it was purchased by B. Lowenstein & Bros., and Long had been placed in possession as their

agent, he moved back the goods which he had secretly removed, and intermingled them with the stock bought by B. Lowenstein & Bros., and that Long then treated the whole stock as his own. It was further claimed that this course of conduct was pursued by Long in consequence of a secret arrangement with B. Lowenstein & Bros., by which the former was to be restored to the possession of the whole stock. This, at least, was the contention on behalf of Brooks, Neely & Co. There was evidence introduced on the trial below tending to show that, on the night preceding the attachments of Lowenstein and others, Long secretly removed a part of his stock from the storehouse into the house of his clerk, but there was no evidence tending to show that, after the Lowenstein attachment, these goods were returned to the storehouse, excepting proof of declarations claimed to have been made by Long himself while in possession of the stock. Long was examined as a witness, and denied he had made such declarations, but witnesses proved he had made them in their presence. The Circuit Judge ruled that these declarations were admissible to contradict Long, but were not original evidence tending to prove a removal and return of the goods. This action of the Circuit Judge is assigned as error.

The portion of the charge objected to is, viz.: "Evidence has been introduced of oral statements alleged to have been made by J. C. Long in regard to goods being moved out of his store on the

night of November 22, 1889, just before the attachment from the State Court was levied in favor of B. Lowenstein & Bros. and others, and afterward moved back. Such statements as are claimed to have been made by Long cannot in any way be considered as establishing, or tending to establish, the fact of removal or return of the goods. However, they may be considered by you in aiding you to determine the extent of credit you will give to Long's testimony as to the other matters and questions involved in this suit—that is, in considering the question as to whether there was a removal of any goods by Long from his store before the levy of the attachment of Lowenstein and others and the quantity of goods removed, and the return of such goods, and quantity returned, are all questions that must be satisfactorily established to your minds by evidence independent of anything Long has said, or is claimed to have said, on that subject, bearing in mind that this does not open the door for guessing or supposing the existence of any of the above facts, but requires that proof in the same way and to that extent that is required to satisfy your minds on any other facts asserted in this case.''

We are of opinion this charge is erroneous, and hold that the declarations of Long, while in possession of the stock of goods, to the effect that all, or a portion of them, belonged to him, were competent as part of the *res gestæ* of the possession, and as tending to show title in him. ''Declarations of

a person in possession of property, explaining and characterizing that possession, and showing in what capacity he holds, whether as owner, solely or jointly, or as the agent, tenant, or trustee of another, and the like, are regarded as the *res gestæ* of the possession, and when that or the ownership of the property are under inquiry, such declarations are received as explanatory of the possession." *People* v. *Vernon*, 95 Am. Dec., 70, note, and authorities cited.

Error is also assigned upon the following charge, to wit: "On the other hand, if the goods which it is claimed Long intermingled with those purchased by B. Lowenstein & Bros., were not of equal, but were of less value than those of Lowenstein, and could not be identified or distinguished from them, then the Marshal had no right to seize any of the goods, and, under such circumstances, the levy by the Marshal would make the defendants liable for the seizure, for the value of the good to the plaintiffs, if they were sold or lost to them, if the defendants participated in the act of the Marshal by giving him an indemnity bond, either at the time of the levy or subsequent thereto, before the sale of the goods by the Marshal."

We are of opinion this instruction was erroneous, in that the loss of the goods, resulting from indistinguishable intermingling, is made to depend upon the comparative value of the portions belonging to the respective owners, instead of enforcing the forfeiture against the one who was responsible for the

wrongful confusion. The law on this subject is clearly stated in the case of *Robinson* v. *Holt*, 39 N. H., 557–563, viz.: "If the goods of several be intermingled, but can be distinguished and separated, no change of property takes place, and each party may lay claim to his own. If the goods are of the same nature and value, although not capable of an actual separation by identifying each particular, if the portion of each owner is known and a division can be made of equal proportionate value, as in the case of a mixture of corn, coffee, tea, wine, or other articles of the same kind and value, then each may claim his aliquot part; but if the mixture is indistinguishable because a new ingredient is formed, not capable of a just appreciation and division according to the original rights of each, or, if the articles mixed are of different values or quantities, and the original values or quantities cannot be determined, the party who occasions, or through whose fault or negligence occurs, the wrongful mixture, must bear the whole loss."

The law governing the confusion of goods, however, could have no place in this case, unless it affirmatively appeared that the intermingling was done with the fraudulent collusion of B. Lowenstein & Bros., and we find in this record no anchorage for such a contention. The fact that Long, while acting as agent for Lowenstein, intermingled his own goods with the stock of Lowenstein, would not bind the latter, for it would be an act beyond the scope

of the agent's duties. The general rule is, that it is the duty of an agent to keep the property of his principal separate from his own, and not to mix it with the latter, and, if he does not keep it separate from his own, and afterwards is unable to distinguish between the one and the other, the whole will be adjudged to belong to the principal." Am. & Eng. Enc. L., Vol. I., p. 384, and numerous citations. Attaching creditors of the agent would occupy no more favorable vantage ground than the agent himself. Again, it has been held that if one owner willfully intermingles his logs or lumber with similar property of another, so that it cannot be distinguished, and the property so intermingled is of different qualities and value, then the innocent party is entitled to the whole. *Jenkins* v. *Steanka*, 19 Wis., 126; 22 Wis., 539; 26 Wis., 74; 20 Maine, 287; 10 Mich., 433; 30 Maine, 370. The several requests on this subject submitted by counsel for Brooks, Neeley & Co. were properly refused by the Court.

For the errors indicated, the judgment is reversed, and the cause remanded.