## WIPPERMAN MERCANTILE COMPANY v. ROBBINS, as Sheriff, et al.

### (135 N. W. 785.)

**Evidence — title and possession — levy.**

1. The acts of and statements made by a defendant in attachment proceedings, when in possession of personal property levied upon, when relevant and material to the title and ownership of said property at the time of levy, are admissible to prove possession and the interest of the attachment defendant in such property. Such statements are not objectionable as hearsay.

**Evidence — title and possession — action for damages — sheriffs.**

2. Certain acts occurring after the levy, tending to establish the surreptitious removal by the defendant in attachment with the knowledge and consent of plaintiff herein, of a part of the personal property levied upon, which part so removed consisted of wild game about to be shipped without the state, *held* properly received in evidence as upon a sufficient foundation laid therefor, and being material to the title and possession of the personal property in litigation, and as bearing upon the good faith of plaintiff's claim of ownership in suit.

**Sheriffs — burden of proof — action for damages.**

3. The court, by its instructions to the jury, properly placed the burden of proof upon the plaintiff to establish before recovery title and right of possession to have been in him at the time of the levy, where both title and possession at said time are in dispute under conflicting testimony thereon.

**Rulings on evidence and instructions reviewed.**

4. Other rulings on evidence and instructions to the jury are reviewed and held proper.

Opinion filed March 4, 1912.   Rehearing denied April 24, 1912.

Appeal by plaintiff from a judgment of the District Court for Richland County, *Allen, J.,* in defendant's favor in an action brought to recover for the conversion of certain property.

Affirmed.

*Purcell & Divel* and *G. W. Freerks,* for appellant.

Evidence admitted was hearsay and incompetent.   Hopt v. Utah, 110 U. S. 574, 28 L. ed. 262, 4 Sup. Ct. Rep. 202, 4 Am. Crim. Rep. 417; 1 Greenl. Ev. p. 99, 1 Philipp's, Ev. 169.; Mima Queen v. Hepburn, 7 Cranch, 290, 3 L. ed. 348, 6 Enc. Ev. p. 443; Reagan v. McKibben, 11 S. D. 270, 76 N. W. 943; Regan v. Whittaker, 14 S. D. 373, 85 N. W. 863; Stevens v. William Deering & Co. 6 S. D. 200, 60 N. W. 739; Anderson v. Jordan, 15 S. D. 395, 89 N. W. 1015; Catlett v. Stokes, 15 S. D. 635, 91 N. W. 310.

Refusal to instruct the jury that burden of proof was on defendants to show delivery of property was prejudicial.   Perot v. Cooper, 17 Colo. 80, 31 Am. St. Rep. 258, 28 Pac. 391; Sargent v. Linden Min. Co. 55 Cal. 204, 3 Mor. Min. Rep. 207; Union P. R. Co. v. Fray, 31 Kan. 739, 3 Pac. 550; Comstock v. Norton, 36 Mich. 277; Williams v. Southern P. R. Co. 110 Cal. 457, 42 Pac. 974; Meyer v. Midland P. R. Co. 2 Neb. 319; Moline Plow Co. v. Anderson, 24 Ill. App. 364; Stevens v. Brown, 14 Ill. App. 173; Michigan Ins. Bank v. Eldred, 9 Wall. 544, 19 L. ed. 763; St. Louis, I. M. & S. R. Co. v. Spencer, 18 C. C. A. 114, 36 U. S. App. 229, 71 Fed. 93; Plummer v. Johnson, 70 Wis. 131, 35 N. W. 334; Welter v. Jacobson, 7 N. D. 32, 66 Am. St. Rep. 632, 73 N. W. 65; Gibbons v. Robinson, 63 Mich. 146, 29 N. W. 533; Gilman v. Gilby Twp. 8 N. D. 627, 73 Am. St. Rep. 791, 80 N. W. 889; Williams & Mobley v. Littlefield, 12 Wend. 362; Ticknor v. McClelland, 84 Ill. 471; Parmele v. McLaughlin, 9 La. 436; Nichols & S. Co. v. Paulson, 6 N. D. 400, 71 N. W. 136; Nichols & S. Co. v. First Nat. Bank, 6 N. D. 404, 71 N. W. 135; Amos v. Livingston, 26 Kan. 106; Bradford v. Stevens, 10 Gray, 379; Hayes v. Fitch, 47 Ind. 21; Thayer v. Wiles, 23 Vt. 494; Caldwell v. New Jersey S. B. Co. 47 N. Y. 282; Meikel v. State Sav. Inst. 36 Ind. 355.

23 N. D.—14.

Goss, J. The plaintiff corporation herein seeks to recover the value of certain property, claimed to be owned by it, but levied upon under attachment and sold on judgment rendered in an action between Goldstein and Kuhlberg, as judgment creditors, against the Peter Fox Sons Company, as judgment debtors. This action arises out of such alleged wrongful levy on the property of the plaintiff, and turns on the issue of ownership and right of possession of the property as attached. If title had been vested by the Wipperman Mercantile Company, prior to the attachment in the Peter Fox Sons Company, and thereunder possession of the property had been delivered to said company, so it became the owner with right of possession and disposition thereof in it, the attachment was levied upon its property, and this plaintiff must fail in this action. On the contrary, if title to such property or its possession, or right of disposition at the time of the levy, remained in this plaintiff with no delivery had, the defendant officer must respond in damages, as the levy would then be wrongful.

The complaint sounds in conversion. The answer is a general denial, coupled with a justification by levy under attachment and sale pursuant to final judgment in an action between such third parties. Trial was had to a jury with a verdict for defendant, from which plaintiff appeals, assigning error falling under general classifications regarding the admission and exclusion of testimony and instructions to the jury complained of.

To an intelligent understanding of this opinion it is necessary to state the following uncontroverted facts before considering the error assigned: This case is a sequel to that recently decided by this court, wherein Abe Goldstein and I. Kuhlberg, as plaintiffs, recovered judgment against the Peter Fox Sons Company, and in which the property here concerned was attached by said plaintiffs as the property of the Peter Fox Sons Company. Plaintiff's third party claim to the property was therein ignored, and it now seeks to recover of the defendants the value of the carload of chickens so taken in the other action. When attached the property was in a car at Hankinson. It consisted of 12,000 pounds of poultry of a value of about $1,400. The property had been accumulated during a period of about two weeks and paid for by this plaintiff. The poultry was brought to the car, in which was an employee of the plaintiff, who would issue duebills to the seller, who, upon presentation of the

same to plaintiff, received payment.   The purchases so made were for a resale of the poultry to the Foxes, under the following:  "This agreement entered into by and between the Wipperman Mercantile Company and the Peter Fox Sons Company, whereby they agree to accept a car of mixed poultry to be taken in on November 5th, at the following prices (scheduled) f. o. b. Hankinson."   The poultry was so purchased at various times from October 14th to November 7, 1908, inclusive. During that period the Foxes gave plaintiff a draft for $600 as an advancement under the transaction, and this amount was used in the purchase of the poultry.   Anthony Fox was at the car during part of this time, and on November 7th was in and about the car preparatory to his accompanying it to Chicago, to which place Fox was making shipment after delivery at Hankinson under the agreement.   Two employees of plaintiff, Henry Wipperman and Blonagan, on November 7th, until noon, were working in the car at purchasing poultry and loading it therein, getting the car ready for delivery to Fox that noon, that he might bill it out and accompany it to Chicago.   Fox had placed in the car certain property he desired to ship in the car, consisting of his personal belongings and about 200 dead wild ducks, the latter in two barrels, and a lunch with liquid refreshments, for use *en route*.   Fox had just interviewed the station agent about billing out the car, and the employees in the car had nearly finished loading it, when the sheriff appeared and levied on the contents of the car as the property of the Fox Company.   Fox at the time claimed to own the property, and made various statements to that effect in the hearing of defendant's employees, who did not disaffirm such averments of ownership made by Fox.   The levy was made at noon, Saturday, November 7, 1908.

During that night Fox and M. A. Wipperman, manager of the plaintiff corporation, together made a trip by automobile to Wahpeton to consult attorneys, returning after midnight.   The car on which was the sheriff's levy stood some 50 feet in the rear of the Wipperman Mercantile Company building and place of business, and that night, and prior to 4 o'clock in the morning, the car was burglarized, and the wild game, the dead ducks, taken therefrom through the back doors of plaintiff's building, which doors were fastened by bars on the inside and could be opened only after entrance into the building from elsewhere.   This wild game was found by the sheriff the next morning, in the second

story of plaintiff's building, in a room used as a cooling room for undertaking purposes. Certain testimony was offered and received tending to prove an admission by Fox of knowledge or participation in burglarizing the car and removing a part of the contents. It is further established that, while these parties were at Wahpeton, plaintiff gave Fox a check to repay the $600 advance by draft Fox had made to the corporation. M. A. Wipperman explains this as having been made necessary because of Fox's threat to stop payment of the $600 draft previously given and of which the $600 advancement to plaintiff consisted; and for the additional reason that Fox refused to accept the car because it was not fully loaded; and thus under plaintiff's claim the Foxes withdrew their money and all interest in the matter, leaving it to future litigation between Goldstein & Kuhlberg, attaching creditors of Fox, and the Wipperman Mercantile Company as owner of the property attached. The testimony about the loading by Fox of the wild game in the car, and the levy thereon, and the burglary of the car and its removal therefrom, as well as all statements made by Fox tending to show his ownership or control of the car, or his intent to bill the same out, together with the trip to Wahpeton and all proceeding subsequent to the levy, were each and all received over objection, upon which, and certain testimony excluded with the court's instructions to the jury, are predicated the assignments of error.

We will first consider the alleged objectionable testimony consisting of declarations by Fox of ownership and possession. These were received after the method of purchase had been shown, and after other testimony tending to and placing in dispute the fact of who had possession and ownership of the property levied upon, and as a part of the proceedings had and occurring at the time of the levy. The objection urged is that such is hearsay testimony. The specific testimony thus admitted consists in the following rehearsal of what took place at the time of the levy. The sheriff at the time of the levy, in the presence of Henry Wipperman and Fox, spoke to one Blonagan, regarding which he was asked: "Q. What did you say to Blonagan, and what did he say to you?" To which the objection of hearsay as to plaintiff was made and overruled, and the answer made: "I asked if that was his car of poultry, and he said it belonged to Fox." After which ruling the witness stated: "Just about then Fox looked up and asked me if I had any

poultry to sell. I told him, 'No;' at the same time Blonagan told him I was the city marshal, and didn't have any poultry to sell. I told him [Fox] I would like to see him. I asked if his name was Fox, and he said he was one of the Foxes; and I asked if he was Peter Fox, and he said, 'No,' he was one of the sons. I asked him if that was his car, and he said, 'Yes;' he was going to ship it out on that train. I gave him the papers that I had to serve on him. He got out of the car in the meantime. Fox told Henry Wipperman to get out of the car and lock the car. I don't think that was before there had been any talk between me and Henry Wipperman, or between me and Fox about locking the car; I spoke about if they was going to lock the car I would like to get the Key. If he [Fox] was going to lock the car I would have to have the key, and he [Fox] told Henry Wipperman to keep the key. Henry did lock the car." And in response to the question: "Then, did you have any further talk about the car of poultry at that time?" over the objection as to hearsay and divers interests of the declarant to that of the plaintiff, and that the declarations were of a self-serving character, the court permitted the following from the officer witness: "I did. He [Fox] said he wasn't going to pay for them potatoes and they would have no right to attach his car; that he was going to fight the Jews to a finish. He would show them that they couldn't attach his stuff; that he would settle for the potatoes if they would settle right, that is, the way he wants to."

Appellant urges that these statements made at the time of the levy are inadmissible. We must bear in mind in this connection at the time of the levy Fox was in the car with the plaintiff's employee Henry Wipperman and one Blonagan, a stranger. Fox had his personal belongings and other property therein. He had assumed right of control over the car just previously in making arrangements for shipping it out. His business was buying poultry, and his company concededly would soon thereafter become such owner if they had not already become such. He was on hand to accompany the car when shipped. Shortly before levy he had left the car, after making a statement to the effect that he must settle for this poultry with the plaintiff, and had returned. He had in fact advanced, as either a loan or part payment on the purchase price, $600 to plaintiff, used in the purchase of this poultry, and thereby, in any event, plaintiff's interest therein were half paid for. The

arrival of the train was momentarily expected. Besides these matters occurring before he left, other acts then and soon thereafter occurring constitute sufficient evidence of Fox's ownership to carry the question of ownership to the jury for its determination. In the presence of the officer, Fox had actual or assumed control, directed plaintiff's employee to lock the car and to keep the key even when the officer desired the same; and pursuant to such directions Fox was obeyed by plaintiff's employee, who thereby at Fox's command disobeyed the attaching officer; the latter thereupon placed his own lock upon the car attached. But there is proof that the key with which plaintiff's employee had then locked the car was thereafter that same afternoon in the possession of Fox.

On this testimony, independent of any statements, the trial court was obliged to submit to the jury the question of ownership under instructions that possession raises a presumption of ownership in the possessor. Most assuredly, then, it would have been error for the trial court to have excluded Fox's statement then made, characterizing the nature of his possession as that of ownership in him. These declarations are founded on sufficient proof of actual possession by the declarant to entitle them to admission as the claim of the party in possession explaining the nature of his holding. But appellant says, "their effect is to establish possession in the declarant." Such may be in part the effect. But the ground for their admission is that these statements explain possession already by act asserted. Such foundation for admission had been sufficiently laid by the showing made as to acts and facts establishing defendant's theory of possession had in Fox, founded upon actual ownership, or from which the presumption of ownership arose. Where so admissible, they may tend to strengthen the conclusions that Fox was in undisputed possession, as well as to permit a presumption of ownership to arise, but that is no ground for excluding such statements otherwise admissible. Were there no foundation of possession shown in Fox from which facts a presumption of ownership could arise, to be in turn a basis for the admission of the statements explanatory of the nature of the possessor declarant's holding, our conclusions would be otherwise. But that question is not before us. The declarations of Fox were those of an owner or a party ostensibly in possession of property, and made as a part of his claim of ownership while in posses-

sion; and the statements so made are explanatory of his possession already shown, and support the legal presumption of ownership, and hence are admissible on the fact of ownership.

Appellant challenges as hearsay the statement of the witness Blonagan that the property belonged to Fox, and made in response to an inquiry of the officer at the time of the levy. This statement, by way of answer, was made in Fox's presence, and was equivalent to Fox's statement to the same effect made immediately afterwards. In fact, Fox did assume the truth of it by immediately inquiring if "he [the witness] had any poultry to sell," to which the witness replied, "No;" whereupon "Blonagan told him I was the city marshal, and did not have any poultry to sell," resulting forthwith in the officer levying upon the car as containing the property of Fox.

While the statement of Blonagan is that of a third party so far as possession or relationship to the parties litigant is concerned, nevertheless, it is a part of the *res gestœ* of the levy. It is interwoven with the facts there done, and tends to explain them. The statements of Fox as the possessor of said property being admissible, these statements in his immediate presence explain his own pertinent and material inquiries and statements. The general trend of authorities would admit all of said statements. See authorities collected in an elaborate note under 95 Am. Dec. 51–76, and Century Dig. vol. 20, cols. 1551–1670 et seq. And if a distinction be drawn between the admissibility of the evidence offered under the *res gestœ* doctrine from that of the verbal act theory, then the statements offered are admissible under the theory that they are verbal acts explanatory of the acts done and dominion asserted over the property. For an elaborate discussion of this, see Wigmore on Evidence, vol. 3, §§ 1768 to 1800. From § 1799, on page 2299, we quote: "A special situation arises where the parties opposed are, on the one side, creditors, levying upon property as that of their debtor Doe, and, on the other side, a party claiming the property as belonging to him, and not to Doe [our case exactly]. Here the possessor making the offered declarations of claim may have been either the now claimant himself or the debtor Doe. . . . When the possessor declarant was the debtor Doe, his declarations of claim will, of course, favor the creditor's case as against the now claimant's, and upon the present principle ought to be admitted for the creditor. In the case where the claimant sets up a title

prior and superior to that of the debtor Doe, the situation is simple; for on no other principle than the present [verbal . . . act or *res gestæ* doctrine] could such declarations by Doe be receivable. The important thing to notice in this place is that upon the present theory of verbal acts corroborating the presumption from possession, none of the above limitations stand in the way [referring to admissibility as admissions where the party in possession has sold to the third party claimant]; by abandoning the use of these declarations as admissions, and by using them as verbal acts, we leave ourselves with only one restriction; namely, that the declarations must have been made by one in possession. Such is the important difference, in practical effect, between treating them as admissions and treating them as verbal acts to aid the presumption from possession." The authority then adopts a portion of the opinion of Burgert v. Borchert, 59 Mo. 80, citing much authority, and closing with the statement that "the rule is familiar that the declarations of a party in possession of property are verbal acts and are admitted as explanatory of the nature of that possession." See an opinion by Justice Brewer, in Stone v. Bird, 16 Kan. 488, where the admissions of a party in his own interests in a similar issue of attachment were admitted, the court saying: "It may be remarked that while, as a general rule, the declarations of a party are not admissible in his own behalf, yet, an exception to the rule exists where the declarations accompany some principal fact which they serve to qualify or explain, and are thus said to be a part of the *res gestæ*. And the exception has been held to cover cases where the possession of personal property has been a principal fact in the case." 1 Greenl. Ev. §§ 597, 598, with notes; 1 Greenl. Ev. § 108. See also 3 Elliott on Evidence, § 1751, from which we quote: "The acts or declarations of an attachment defendant, while in possession, and which explain the character of his possession, are admissible in a proper case as a part of the *res gestæ*." "So the testimony of the party in possession has been held competent to prove for whom he held possession." This in a suit under third party claim. 11 Enc. Ev. 388; 47 Century Dig. col. 213; Adams v. Kellogg, 63 Mich. 105, 29 N. W. 679; Standard Implement Co. v. Parlin & O. Co. 51 Kan. 566, 33 Pac. 363–366; Jones v. Chenault, 82 Am. St. Rep. 211, and note (124 Ala. 610, 27 So. 515); Lehmann v. Chapel, 68 Am. St. Rep. 553, with note (70 Minn. 496, 73 N. W. 402); Moore v. Jones, 63 Cal.

12; Noblitt v. Durbin, 41 Or. 555, 69 Pac. 685; Brooks v. Lowenstein, 95 Tenn. 262, 35 S. W. 89; Harton v. Lyons, 97 Tenn. 180, 36 S. W. 851; 16 Cyc. 1146 to 1155, and 1166 to 1176; Jones v. Hess, — Tex. Civ. App. —, 48 S. W. 46; Rosenberg v. Burnstein, 60 Minn. 18, 61 N. W. 684, and the following recent cases: Traylor v. Hollis, 46 Ind. App. 680, 91 N. E. 567; Holman v. Clark, 148 Ala. 286, 41 So. 765; Cohn & G. Lumber Co. v. Robbins, 159 Ala. 289, 48 So. 853; San Antonio Brewing Asso. v. Magoffin, — Tex. Civ. App. —, 99 S. W. 187; McDonald v. Bayha, 93 Minn. 139, 100 N. W. 679.

An examination of the foregoing authority will suffice to establish beyond question the admissibility of the proof received. The acts and statements of Fox testified to by the station agent, relative to his contemplated shipment of the car that noon in question, and which was prevented by the attachment just after such preparations had been made, are, under the foregoing authorities, admissible as the statements of a party in possession of the property in suit, and relevant to the issue of title and possession on trial. The testimony of the officer as to Fox remaining at the car most of the afternoon after the levy, and of his having a key to the lock that Henry Wipperman put on at his order, and Fox's entry into the car with the officer for his personal belongings, and his statement that the barrels which held the contraband ducks were feed, are all admissible under the foundation laid therefor, and are not subject to the objections urged that they are immaterial, incompetent, and irrelevant and as occurring at a time after the taking of possession by the sheriff. The acts done, as well as the statements tending to deceive the sheriff as to the property he then held under levy, are material, and especially so in the light of evidence of subsequent events, the burglarizing of the car and the finding thereafter of the contraband game in the ostensible possession of this plaintiff and in its building. When considered with the ignorance of the officer of the wild game being in the car and covered by the levy, he not discovering it until after the burglary, and it being known to plaintiff's employees, and it being clearly apparent that Fox desired the removal of this game before the officer had knowledge of it; this, together with M. A. Wipperman's testimony of his transactions with Fox that night, and repayment to Fox of the $600 advanced, were circumstances which defendant was entitled to have considered by the jury for what they were worth. If they con-

cluded the intent of Fox to have been that the contraband ducks should be gotten rid of as evidence, and that Wipperman had knowledge thereof or participated therein, and that the payment to Fox was likewise to assist him to clean up preparatory to this plaintiff asserting, as it did, its third party claim to the other contents of the car, they could reasonably doubt the good faith of such claim and weigh the other testimony relative to it accordingly. If such a scheme to suppress evidence did exist, and the evidence is certainly sufficient to make it problematical and a matter for the jury to determine, the jury had the right to consider the unsuccessful attempt at suppression or spoliation of evidence as a strong circumstance against the good faith of plaintiff in making the claim, and as against its probable validity. That the spoliation of evidence may raise the presumption that it is against the party guilty of the act of spoliation, see 107 Am. St. Rep. 765, 20 Century Dig. cols. 168 et seq.

As to the evidence of the presence of the wild game in the car at the time of the levy, to the showing of which plaintiff predicates error, it is admissible as a circumstance, as much so as was the proof that Fox, in whom possession and ownership are claimed by defendant to have then existed, had his personal belongings necessarily there for his comforts *en route* during the journey upon which he was about to enter. They all show the preparation and intent of the parties, as well as Fox's present assumption of authority to that extent at least in the matter; and we see no more reason for excluding proof of the presence of the wild game, placed there by Fox with the knowledge of plaintiff's employees and levied upon, than we do to excluding proof of the presence there of the contraband liquid refreshments or the cases of eggs he was taking along with him to Chicago, all of which were in the car when it was seized. They are facts admissible as a part of the circumstantial proof of ownership and possession.

As the contents of the car at the time of levy was a proper subject-matter of proof, and the removal therefrom of property so held and material to the question of title or right of possession was admissible, likewise must have been the statement of the party thus in possession of the property so removed and secreted; hence Wipperman's disclaimer of knowledge of how the ducks came where they were found after their removal from the car was admissible. Nor does appellant contend

the contrary. And Fox's admission, by his statement to the officer when confronted with the discovery: "I'm up against it; I might as well settle with the Jews. If I don't the other fellows will steal them from me," in response to the question of who got into the car and what the barrels were taken out for,—all received over the objection that the same was immaterial, incompetent, and hearsay,—is admissible as equivalent to a confession of his knowledge of the commission of the act; and when considered with the evidence tending to connect the plaintiff's manager, Wipperman, by his then possession of the goods so taken, the circumstances of how the goods must have been gotten into the building through the back doors of plaintiff's establishment, and then placed where they were found, and the conclusion to be drawn therefrom that someone with a key and with knowledge of plaintiff's place of business and building must have assisted in secreting them therein, coupled with the contraband character of the goods and their evidentiary value on the issues to arise in this suit, which action is shown by Wipperman's testimony to have been then in contemplation; considered with Fox's connection with the entire matter-prior to and at the time of levy and thereafter, tending to characterize his possession and define his interest as that of owner and party in possession; considered together with the fact that the matter so confessed was but part of the necessary clearing of the decks for action prior to the commencement of this lawsuit,—the successful accomplishment of which would have left plaintiff in a much better position to recover then had it not been undertaken; from all these matters, and resting on them as a foundation, we have no hesitancy in saying that the statement objected to was properly admissible as a fact or circumstance in the case for the jury's consideration. Not that the statement established the truth of the matters so confessed, but rather that it, whether true or false, was an evidentiary fact material in the case. And the very words of the admission still further assert his ownership inferentially in that he must "settle with the Jews" and thereby relieve his property from the levy under which they were held.

The court excluded certain proofs offered by plaintiff, among which was an offer by M. A. Wipperman to show that, upon his discovery of this wild game on the premises of the Wipperman Mercantile Company, he notified the proper authorities of such fact, and that such game was

immediately taken possession of by the game warden. Testimony in line with the offer was excluded as immaterial, and not tending to prove or disprove any fact in issue, and the ruling was correct. What plaintiff did therewith was immaterial. It was concededly the property of Fox, and whether it was removed or allowed to remain in the embalming room was wholly immaterial; it was found there. Plaintiff was permitted to disclaim prior knowledge thereof or how it got there, and we cannot see how the question of what he did with it has any materiality. Nor do we find merit in any of the assignments made under exclusion of testimony offered by appellant. Under one of such assignments appellant was asked concerning the duty of his employee, Henry Wipperman, who received the chickens and issued orders or duebills for them: "Now, what were his duties and what was he doing with reference to the loading during the time this loading was going on?" Answer to which was excluded on the objection that the same was immaterial, not tending to prove or disprove any fact in issue, and as calling for a mere conclusion of the witness. While the ruling was largely one of discretion with the trial court, the same witness was allowed to detail at length, immediately thereof, all the matters that could have been sought to be elicited by the question to which the objection was sustained.

We now reach a consideration of the court's instructions to which error is assigned. Did the court, as contended by appellant, misplace the burden of proof? On this vital question the court gave the following instructions, a part of lengthy instructions to the jury as to the law of the case: "On the burden of proof the court instructed: (1) "That the burden of proof is always upon the party holding the affirmative, and any matter assented by one party and denied by the other can only be proved in law by a preponderance of the evidence." And, further: (2) "The Wipperman Mercantile Company claimed that they are the owner and entitled to the possession of the property. Under those circumstances it is necessary for the plaintiff to prove to the jury by a preponderance of the evidence that as a matter of fact at the time in question, the 7th day of November, 1908, the Wipperman Mercantile Company was entitled to the possession of the property in question. The plaintiff should prove its case by a preponderance of the evidence. If you find the evidence to be equally balanced as between plaintiff and defendant, your verdict should then be in favor of the defendant. If,

on the other hand, you find the evidence preponderates in favor of the plaintiff, your verdict should be in favor of the plaintiff." In outlining the issues for the jury's determination under an application of the foregoing rules as to burden of proof, the court instructed as follows: "The plaintiff claims that it was the owner and in possession of a car of poultry on a side track at Hankinson on the 7th day of November, 1908, and that the defendants have taken possession of and converted that carload of poultry to their own use. The defendants claim that this carload of poultry was the property of Peter Fox Sons Company; that Goldstein & Kuhlberg, they being defendants in this action, obtained a judgment for a certain amount against Peter Fox Sons Company, and an execution was issued on said judgment, and that the sheriff had levied execution on the carload of poultry. If you find the contention of the plaintiff to be true, viz., That the Wipperman Mercantile Company was at the time in question entitled to the possession of this carload of poultry, your verdict should be in favor of the plaintiff. If, on the other hand, you conclude that the poultry was at that time the property of the Peter Fox Sons Company, and that the Peter Fox Sons Company was entitled to the possession of the poultry at that time, your verdict should be in favor of defendant." The court further instructed that the payment of a part only of the purchase price to plaintiff by the Fox Company would not give the Fox Company any title or right of possession; and that the plaintiff had the right to retain its possession until the purchase price was fully paid; and that the poultry was "originally the property of the plaintiff, and it is contended in behalf of plaintiff that it continued to be the owner and was at all times, up to and including the time of seizure and attachment on November 7, 1908. It is contended by the defendant, on the contrary, that such property was sold and delivered by the plaintiff to the Peter Fox Sons Company so completely that the plaintiff had no claim to it as against the Peter Fox Sons Company; and in that behalf I charge you that if the plaintiff sold the property in question to the Peter Fox Sons Company, and completed a delivery of the same by turning it over to that company or its representative, with the intention on the part of plaintiff that it should cease to be its property, and should be owned and taken possession of by the Peter Fox Sons Company, then it would become the property of that company." "But if, upon the other hand, it was the intention of the parties at the time

of the transaction detailed in evidence as to the placing of the property in the car, that the plaintiff should retain title and possession thereto until the Peter Fox Sons Company had paid the purchase price, then such intent of the parties would govern, and the title would remain in the plaintiff, and it would be entitled to a verdict for whatever you find the value of the property to be under the evidence that has been adduced; and before the defendants are entitled to a verdict at your hands you must be convinced that it was the intention of the parties that the property, as loaded in the car in question and the full right of control over it, free of any claims of right in the plaintiff to hold it as against the Peter Fox Sons Company, should pass to that company." Under these instructions, unquestionably correct under the issues and evidence, the jury was informed particularly as to the issues to be passed upon by them and as to plaintiff's rights thereunder; and nothing less than palpable erroneous instructions as to the burden of proof would warrant setting aside the verdict on such grounds.

On this subject, did the court properly refuse to give the following instructions requested by appellants? "The burden of proof in this case is upon the defendant to establish that the title to the poultry in question was transferred to the Peter Fox Sons Company by the plaintiff, as claimed by the defendant." The question of who has the burden of proof in an issue between attaching creditors and a third-party claimant, where the property at the time of the levy is in the possession of such third-party claimant, or, in other words, when the sheriff under the writ of attachment dispossesses a third-party claimant, is an open question in this jurisdiction. And it is not necessary here to pass upon it, as the possession of the car was in dispute under the evidence. The main issue of fact for the jury to determine was whether Fox, on behalf of his company, was in actual possession at the time of the levy. Most of the declarations made and circumstances above set forth are on the question of possession as well as ownership; and there is evidence that shortly prior to the levy, Fox had left the car for the avowed purpose of settling with plaintiff for the poultry, and, returning, was exercising control over the property and continued to do so until the levy. Plaintiff denies any settlement, and offers testimony that under its theory of the case may harmonize with its ownership and actual possession of the property, to the effect that it had not parted with possession and had no intention

of delivering the car to Fox until such settlement was had and there-under passed title to his company. Nevertheless the jury found against defendant's claim and in so doing passed upon a direct conflict of evidence. There are holdings to the effect that where the undisputed possession of the property levied upon is in the third-party claimant, a presumption of ownership from possession arises, sufficient to make the levy prima facie wrongful as a levy upon goods other than those of the defendant in attachment. But this question is not before us, the possession being a disputed fact in evidence. And as the case stands the third-party claimant is unaided by any such presumption, and the burden is where it was placed primarily by the pleadings upon the third party claimant, the plaintiff, to establish his title and right of possession by a fair preponderance of all the evidence thereon. In view of an apparent conflict of the authorities on this question, we will state that from an examination of what we believe to be nearly all the authority available on this question, the conflict apparently arises in the first instance because of the difference in procedure, causing the third party to be regarded accordingly at times as an intervener, and as such an additional party defendant as to whom the plaintiff, the attaching creditor, still has the burden of proof because of being plaintiff in the action. And then again, under statutes requiring separate actions therefor to be brought after service of notice or third-party claim, in which instances the burden of proof as in other cases being upon the plaintiff under the pleadings, he has to assume it throughout the trial. But in nearly all of the states, even where the third party intervenes in the original attachment action, such third party has such burden of proof, except where the property is found by the sheriff in the undisputed possession of the third party, the intervener, whereupon a presumption of ownership is, in some jurisdictions, held to arise from the fact of such possession.

The court rightfully refused to give the instructions requested, and placed the burden of proof where it belonged. 2 Enc. Ev. 82–86; Shinn, Attachm. §§ 437, 438; Wallace Bros. v. Robeson, 100 N. C. 206, 6 S. E. 650, for a full discussion on a statute practically our § 6951, Rev. Codes 1905, under third-party claim; Wear v. Sanger, 91 Mo. 348, 2 S. W. 307; Burr v. Clement, 9 Colo. 1, 9 Pac. 633; 3 Elliott, on Evidence, §§ 1751, 1752, from which we quote: "Where a third party interpleads or brings an independent action, claiming a superior right to the at-

tached property, the burden in most jurisdictions is upon such party to show his better claim." And then again: "Where a petition of intervention to an attachment is filed, and the petition is based upon the fact that the property belongs to the one intervening, and claims that the intervener acquired it by purchase prior to date of attachment, the burden is upon such intervener to show that he owned it before the filing of the attachment, and to prove by what manner he acquired title to it or any other interest he may claim." "The burden of proof is usually upon the intervening claimant to prove that the property belongs to him if in the hands of the attachment defendant; and this is true even though the property is not actually in his possession but only constructively so, or if in the hands of his agent or of a carrier. The plaintiff has the burden of showing that at the time of seizure the sale was completed and title had passed." 47 Century Dig. col. 216, under title "Burden of Proof;" 4 Wigmore, Ev. chap. 86 and § 2515; Standard Implement Co. v. Parlin & C. Co. 51 Kan. 566, 33 Pac. 363; Mathis v. Carpenter, 95 Ala. 156, 36 Am. St. Rep. 187, 10 So. 341–343; Lagomarcino v. Quattrochi, 89 Iowa, 197, 56 N. W. 435; Wilson v. Hill, 17 Nev. 401, 30 Pac. 1076.

A request was made that the jury be informed that a right of stoppage *in transitu* existed in plaintiff, whereby plaintiff could reclaim the property until it was actually delivered to the Fox Company in Chicago. This request was properly refused as without the scope of the proof. Two further assignments of error are based upon the refusal of the court to give certain instructions in the identical terms as requested. As the court's charges fully and substantially covered the matters contained in the requested instructions, appellants have nothing of which to complain. This covers all errors assigned.

The judgment is ordered affirmed.

SPALDING, Ch. J. (dissenting). The decision in the case of Goldstein and Kuhlberg v. The Peter Fox Sons Company, just decided, did not meet with my concurrence, in brief, because I am satisfied that the court never acquired jurisdiction of the defendants therein, or of their property, notwithstanding the apparent array of authorities referred to in the opinion. The relevancy of the cases so referred to in the decision of this court is, in my opinion, with one or two exceptions, more ap-

parent than real. In that case it was not simply a misdescription of the defendants in the title to the action, but it was an attempt to sue a party which did not exist, and recovery was had against a party never sued and never before the court, and one over whom jurisdiction could not be obtained by an amendment made without notice. One of the plaintiffs verified the complaint, and therein it was stated that the defendant was a foreign corporation, and the right to an attachment was based, among other grounds, upon the allegation that the defendant was a foreign corporation. Similar allegations were contained in the other papers in the proceeding. The undertaking for attachment was given to a foreign corporation and never amended, and the sureties therein never incurred any liability to the defendants. A suit cannot be brought by or against a partnership in the firm name except as authorized by statute, and this state has no statute authorizing it. 30 Cyc. 560, ¶ 2, and note 19.

I am of the opinion that the decision in the companion case is vitally wrong in principle, and furnishes a most dangerous precedent; that it is a misconstruction of the statute regarding amendments and contrary to the weight of authority; and it being clear that the admissibility of evidence and the defense in general, in the instant case, are so related to and affected by the decision of the trial court in the other case that they cannot be disentangled, that there should be a reversal herein.