(71 N. W. Rep. 555.)

---

FRED GORDON *vs.* VERMONT LOAN AND TRUST COMPANY.

Opinion filed April 29th, 1897.

**Agency—Evidence—Ratification.**

> Under the evidence in this case the court erred in submitting the case to the jury. Agency cannot be established by the statement or act of the pretended agent, nor will the ratification of an act that the principal was bound to perform or of an act that could only inure to its benefit, have any tendency whatever to establish an agency to act generally concerning the matter for such principal.

Appeal from District Court, Grand Forks County; *Templeton,* J.

Action by Fred Gordon against the Vermont Loan and Trust Company. There was a judgment for plaintiff, and defendant appeals.

Reversed.

*Burke Corbet,* for appellant.
*Standish & Barry,* for respondents.

BARTHOLOMEW, J. This action was brought to recover for certain labor performed by plaintiff in the summer of 1894 in plowing and dragging on the N. E. ¼ of section 4, township 152, range 56. Whether or not plaintiff can recover in this action

depends upon the question of whether or not the person who employed him to perform such services was the agent of the defendant, the Vermont Loan and Trust Company, for such purposes. The decision of this question will only require a consideration of the ruling of the trial court in refusing to direct a verdict for defendant. At the close of plaintiff's testimony, and again after the testimony was all offered, defendant requested the court to direct the jury to return a verdict for defendant on the ground that there was no competent evidence whatever in the case tending to establish such agency. This the court refused to do. In view of such refusal, and of the further fact that the jury returned a verdict for plaintiff, which necessarily involved finding that such agency did exist, we have given the evidence in the case careful and painstaking study. The facts are so far involved, and the circumstances of the case so peculiar, that it becomes necessary for us to state the facts in *extenso.* In the spring of 1894 one Adare was the owner of the quarter section above described and three other quarter sections of land. He was without means necessary to procure seed for seeding his land. He was also indebted to the defendant in the sum of about $1,500, which was entirely unsecured. Just what interest he had in the lands does not appear, but it is stated by both parties that these lands were incumbered. In view of his financial stress, Adare made the following proposition to the defendant: He would transfer all of said lands to the defendant, and would procure tenants for the same, the defendant to furnish the seed necessary to seed the land, and all the share of the crops belonged to the landlord under the leases, and should be the property of the defendant, and when defendant should receive sufficient amount to extinguish Adare's indebtedness to the defendant the lands should be reconveyed to Adare. This proposition the defendant accepted, and the tract of land on which the work was performed was so transferred to the defendant. Subsequently Adare negotiated with one Arne Anderson to lease said land for the season of 1894. As a result of such negotiations a lease was drawn and

signed by the defendant, by F. W. Wilder, as its treasurer and manager, and by the said Anderson. This lease provided that Anderson should plow all the land in such quarter section not already plowed, and that he should properly cultivate and crop the entire tract; the defendant to furnish the seed, and pay one-half the twine bill and one-half the threshing bill; the title to the entire crop to be in defendant until division; when divided, each party to have one-half. Soon after the execution of the lease, Adare went out to the land, and was informed by Anderson that there was not the amount of plowed land on said quarter section that Adare had represented. At that time the plaintiff, Gordon, was with Adare. Anderson stated, and it is not disputed, that Adare had represented that 110 acres of said tract was plowed, while in truth only about 55 acres had been plowed. It seems from the evidence that the tenant who had occupied the land the previous year was under obligation to plow back 110 acres, but he had not done so. Adare stated that he would see the former tenant, and have him plow the remainder. Subsequently he informed Anderson that the former tenant would do nothing about it, but that he would have plaintiff, Gordon, plow the 55 acres that was short, and he would settle with Gordon for it. He did employ Gordon to do the plowing, and Gordon did it, and this furnishes a part of the claim sued upon. It seems also that there were yet 50 acres more of unplowed land on the tract, which, under the terms of the lease, Anderson was to plow. Anderson suggested to Adare that he could not plow the land, and could not hire any one to do it, whereupon Adare stated that he would get Gordon to plow that also, and also do certain dragging for Anderson, and he would settle with Gordon, and take a mortgage on Anderson's share of the crop to secure the payment. Gordon was accordingly employed to do this work, and he did it, and that also forms a portion of the claim sued upon. The case turns upon Adare's authority to so employ Gordon. It is uncontroverted that the defendant knew nothing of such employment until the fall following, after Adare had absconded, when plaintiff's bill for said

work was presented to defendant. Defendant promptly repudiated any liability for the claim. It is urged that, as Adare, in negotiating the lease, had represented that there was a certain amount already plowed as an inducement to Anderson to make the lease, and as the lease was entered into by Anderson relying upon such statement, it became the duty of defendant to make that representation good, although the lease was silent as to the amount plowed, and although defendant knew nothing of such representations. This may be true, yet defendant had the legal right to refuse to make the representations good, and take the consequences. Plaintiff could not voluntarily make such representations good, and then ask to be paid for so doing. He must show a valid contract by some one authorized to bind defendant.

Over defendant's objection, plaintiff introduced in evidence many things that Adare said and did, the court taking the position that such evidence was competent for the purpose of showing the contract between Gordon and Adare. The elementary principles that the authority of the agent cannot be established by the statement or acts of the agent dispose of all those portions of respondent's brief when particular effects is claimed from language used. The claim is made, however, that when the acts of the agent or of the party assuming to act as agent are ratified or acted upon by the principal to its benefit, thereafter the principal cannot be heard to deny the agency. This, of course, is a sound proposition of law, so far as the act thus ratified or acted upon is concerned. And it may be that, where repeated acts concerning one matter have been thus ratified or acted upon, a jury might be warranted in finding therefrom an athority to act generally concerning such matter. Mechem, Ag. §§ 83, 821; Rev. Codes, § 4308. It becomes necessary to inquire what acts, if any, were performed by Adare, or what contracts, if any, were made by him, concerning the raising or disposition of this crop. It seems that Gordon knew, before he performed any of the work, that the title to the land had been conveyed to defendant, and that Anderson held the same under a lease from the defendant.

The evidence also shows that Adare procured the seed with which Anderson seeded the land. This, under the lease, the defendant was bound to furnish, and it must be admitted that in so doing Adare acted as the agent of defendant. There is no proof, however, that Gordon had knowledge of this fact. It seems that Adare took from Anderson a note and chattel mortgage securing the same for the sum of $100, which included the cost of plowing the 50 acres which Anderson should have plowed under the lease, and which was plowed by Gordon, and included also the price for the dragging done by Gordon, and an amount of money which Adare advanced to Anderson. This note and the mortgage ran directly to the defendant. Plaintiff, Gordon, was one of the witnesses to said mortgage. It also appears that Adare took from Anderson a subsequent note and mortgage for $30 for money advanced, also running direct to the defendant. Whether or not Gordon had any notice of this last mortgage does not appear. It is also in evidence that in the fall Adare purchased from Anderson his share of the crop, and the entire crop was shipped by Adare in the name of the defendant, and the defendant received the proceeds thereof, Adare settling with the tenant, and deducting the amounts of such notes and mortgages; also the amounts that he had paid Gordon for doing certain work in harvesting said crop, and paid Anderson the balance coming from his share of the crop out of his (Adare's) own money. It is undisputed that the notes and chattel mortgages mentioned were delivered by Adare to the defendant, and one of the notes—the smaller— was in the fall, after its payment, delivered by the defendant to Anderson. From these facts it is claimed that a general agency on the part of Adare is established, and that Adare must be held to have been authorized by the defendant to have full supervision for defendant in raising and disposing of said crop.

Our next inquiry is to determine which, if any, of these acts of Adare were ratified by the defendant, or beneficially acted upon. As to the securing of the seed grain by Adare, it nowhere appears that the defendant ever paid for the same, but, as it was under

contract obligation so to do, we may assume that it did, and to that extent Adare must be held to have been authorized to act. This act, however, being one which defendant was bound by its contract to perform, its ratification cannot, under any principle of law, be held to create an agency on the part of Adare to do any act for the defendant relating to the farming of said land that it was not under contract to perform. We have said that the notes and chattel mortgages were taken in defendant's name, and delivered to it. While this is true, it is equally true, and entirely undisputed, that when received by defendant, defendant did not know, or have any reason to believe, that any consideration had passed from it to Anderson to support the notes. The undisputed evidence is that the notes were delivered by Adare to defendant as collateral security for the debt owing by Adare to defendant. In other words, defendant received them supposing that they were in fact the property of Adare which he had taken in defendant's name for his own convenience. This being true, the receipt of the notes by defendant cannot be regarded as a ratification of any of the acts which constituted a consideration for said notes. It is fundamental that ratification cannot be had without knowledge of the facts connected with the transaction. The entire crop, as we have seen, was shipped in defendant's name. This was done by Adare's direction. Defendant received the proceeds of the crop. This was, of course, a ratification of that particular act, and confirmed Adare's authority to ship the grain. But in no legal sense could this establish the fact that Adare was the agent of the defendant months before, and for purposes of an entirely different character. Mechem, Ag. § 85, and cases cited. These acts that were ratified by the defendant were acts that the defendant was either bound to perform, or that inured directly to defendant's advantage, without subjecting it to any liability whatever. Nor were they of a character to furnish any competent proof of a general agency, either actual or ostensible, on the part of Adare to act for defendant in the management of said tract of land. As already stated, there was no competent

evidence in the record tending to establish an agency, unless it was the acceptance and ratification of Adare's acts; and these we hold, on examination, were not sufficient for the purpose. On plaintiff's testimony alone, uncontradicted in any particular, there was not, in our judgment, any competent evidence to establish Adare's agency. And this, to our minds, becomes doubly sure when we consider the circumstances under which the acts were performed. As we have seen, Adare was the party really beneficially interested in the crop. Whatever crop was raised was raised for his benefit, and he alone was to reap the advantage therefrom. It was his debt that was to be paid by the proceeds of the crop. The defendant was simply in the attitude of a mortgagee in possession. It was to Adare's interest to see to it that all of said land was cropped, and cropped in the most advantageous manner. The hiring of plaintiff inured directly to his personal advantage. There is nothing in the record that would warrant us in believing that the defendant anticipated or would have accepted the hiring of plaintiff had it known that such hiring was at its own expense. The general manager testified that for the purpose of securing the payment of Adare's unsecured debts the defendant was willing to incur the further obligation of procuring seed for the land, and in some instances—as in this—of paying a portion of the twine and threshing bills. But from this we are not to presume that the defendant would have been willing to incur the further burden of plowing the land, or putting in the crop. When, then, the acts of Adare are considered in the light of the surrounding facts and circumstances, they furnish no evidence whatever upon which a jury was warranted in finding the existence of an agency, or upon which a court was warranted in submitting that question to the jury.

Reversed, and a new trial ordered. All concur.