# LAKE GROCERY COMPANY v. LORETTA CHIOSTRI.

## (158 N. W. 998.)

Action for goods sold and delivered. Proof shows deliveries at business places to those in charge. Defendant denies ownership of or interest in said business places formerly managed by her husband, now deceased. The issue was whether defendant was or was not financially interested. Defendant's name was and and had been used for years on checks in paying firm debts; the firm account was kept in her name, as was the bakery bank account; she knew of this, and knew that her husband had used the firm name in buying goods; she had at times made objection; her husband had been some years ago in financial trouble, and she thought the use of her name in the business in this manner might make her trouble. She disclaimed any interest in the bank account and had never placed any of her money in it. She knew one of said places was owned by a partnership and run under the firm name of "L. Chiostri & Andrei," the first name being hers; the other was known as "Otto's Bakery." She knew that these places of business were dealing with plaintiff on account, and she herself had, at the order of her husband, Otto Chiostri, drawn checks in her name on the bank account in payment of goods purchased, but had never done so except as ordered by her husband, who, she claims, was the real owner of both places of business. During the time in suit Andrei retired from the partnership running one of the places. Plaintiff offered to show that Andrei had executed and delivered a bill of sale to defendant of his partnership interest, and that said bill of sale had been filed with the register of deeds, and this during the time this account was running. Defendant denied any knowledge of the bill of sale, but stated that she knew the partner had retired from the business, and in which business her name had been used for years, and that the business continued thereafter to be run in her name. The bill of sale was excluded on defendant's objection. Plaintiff also offered to show that its agents, when investigating the financial condition of said business as to whether to grant extensions of credit for the goods sold on account, had conversed with defendant's husband, Otto Chiostri, then in charge and managing said places, and he then had told them for plaintiff that his wife, and not he, owned the places of business; that he had insured his life in her favor for $8,000, "which would go to the wife when he died, and which could be used to pay any bills:" "that plaintiff relied thereon," and sold on account these goods to these places of business. These statements were excluded on defendant's objection. *Held:*

**Goods sold and delivered — action to recover price — delivery — business — ownership or interest in — defendant denies — bill of sale — evidence — jury.**

1. The bill of sale and the fact of its filing were admissible in evidence to be considered by the jury under proper instructions.

**Declarations of party — proof of — evidence — foundation laid — agency — declarations of agency — by agent.**

2. A sufficient basis was laid for the reception in evidence of these declarations of Otto, though tending to make proof of agency by declarations of the agent.

**Statements of agent — not alone proof of agency — prima facie case — made as part of case — business relations — connected with.**

3. While without other basic proof, statements of the agent are not competent to prove the agency, yet where a prima facie case of agency has been made out independent of any statements of the agent, such declarations by the agent, made in the prosecution of and relative to the business contemplated by such agency, are admissible against the principal on questions of agency and ownership of the business.

**Prima facie case — when established — independent of agent's statements — matter of law for court — jury — findings of — sustained without agent's statements — principal bound by — when.**

4. The question of when a prima facie case has thus been established by proof independent of statements of the agent is a matter of law for the court to determine, with the test being whether there is sufficient evidence of agency without said declarations to sustain a jury's finding of such agency. Where such a finding would be sustained, a prima facie case of agency has been established and the declarations and statements of the agent when so made are admissible against the principal.

**Deceased person — transactions with — testimony of — statute.**

5. Such statements offered were not within the bar of the statute excluding testimony of transactions with a person since deceased, under subd. 2, § 7871, Comp. Laws 1913.

**Ostensible agency — proof of — estoppel — liability by.**

6. The proof may be sufficient to establish an ostensible agency and yet be insufficient to establish a liability by estoppel.

**Bookkeeping — method of — owner of business — evidence of — delivery — acceptance.**

7. The method of bookkeeping and the charges made upon the books is but one element of fact in the case. Defendant might be held as the real owner of the business and as the person to whom the goods were really sold, even though, at the time of the sale, the goods were charged to another, where the delivery was made to the person in charge of the place of business as to the ownership of which the issue of fact arises.

**Goods sold — complaint as for — person — partnership.**

8. A recovery cannot be had upon the complaint as for goods sold to the defendant for those goods sold and delivered to the partnership.

**Running account — payment on — balance due — direction as to.**

9. Payments made upon the running account could be applied upon the balance due, where no direction was made as to application of payments.

**Directed verdict — motion for — by both parties — dismissal — evidence — preponderance — procedure.**

10. Upon motions by both parties for directed verdict, one of dismissal was directed, the court stating that "if there is any question of fact left in the case, I resolve that in her favor." Defendant contends that, even though proof was erroneously rejected, the verdict should be sustained unless the court's ruling is against the fair preponderance of the evidence. This position is untenable, as, had the rejected testimony been received, a verdict could not have been directed without passing thereon, and there is no certainty that the same procedure would have been had or the same result arrived at had the testimony erroneously rejected been received.

An appeal from the District Court of Ramsey County, *Bultz,* Judge. Reversed and new trial ordered.

*Middaugh & Hunt,* for appellant.

Among cases in which, primary evidence being unavailable, unsworn statements give rise to an inference of their truth, are declarations of third persons, not witnesses, which are opposed to the pecuniary and proprietary interests of the declarant. 16 Cyc. 1217.

Such statements, otherwise relevant,—the primary evidence being unattainable,—are competent. 16 Cyc. 1219, 1220; Tyres v. Kennedy, 126 Ind. 523, 26 N. E. 394; Dixon v. Union Ironworks, 90 Minn. 492, 97 N. W. 375; Wilson v. Albert, 89 Mo. 537, 1 S. W. 209; Quinby v. Ayers, 1 Neb. (Unof.) 70, 95 N. W. 464; Wilson v. Simpson, 80 Tex. 279, 16 S. W. 40; Dean v. Wilkerson, 126 Ind. 338, 26 N. E. 55; 1 Elliott, Ev. § 441.

Evidence of a conspiracy, combination, or common design may establish a relation of agency so as to make the statements of one party competent against the others concerned, provided such statements are made within the scope of the common enterprise. 1 Lewis's Greenl. Ev. § 153; 16 Cyc. 983, 1281; Riehl v. Evansville Foundry Asso. 104 Ind. 70, 3 N. E. 633.

Plaintiff should have been permitted to testify and show upon what facts it based its credit. Missouri, K. & T. R. Co. v. Yale, 27 Tex. Civ. App. 10, 65 S. W. 57; First Nat. Bank v. Bakken, 17 N. D. 224, 116 N. W. 92; 17 Cyc. 215, note.

Where a wife was held out as the owner of a business and another was induced to perform labor for her on the strength of her ownership,

she should and would not be permitted to deny it. Multz v. Price, 91 App. Div. 116, 86 N. Y. Supp. 480; Missouri, K. & T. R. Co. v. Yale, supra.

Defendant is estopped to deny ownership. Walter Moise & Co. v. Krug, 72 Neb. 42, 99 N. W. 816; Blanke Tea & Coffee Co. v. Trade Exhibit Co. 5 Neb. (Unof.) 358, 98 N. W. 714; Sinclair v. Investors Syndicate, 125 Minn. 311, 146 N. W. 1109; Triller v. Sadle, 92 Neb. 579, 138 N. W. 728; Minneapolis Threshing Mach. Co. v. Humphrey, 27 Okla. 694, 117 Pac. 203; Long v. Thayer, 150 U. S. 520, 37 L. ed. 1167, 14 Sup. Ct. Rep. 189; Southern Oil Works v. Jefferson, 2 Lea, 581; Hatch v. Taylor, 10 N. H. 538; Best v. Krey, 83 Minn. 32, 85 N. W. 822; Columbia Mill Co. v. National Bank, 52 Minn. 224, 53 N. W. 1061.

The courts of our own state have also jealously guarded the doctrine of estoppel, and look with disfavor upon any attempt to narrow its scope. Peabody v. Lloyds Bankers, 6 N. D. 27, 68 N. W. 92; Comp. Laws 1913, §§ 6336, 6338.

The general rule is that a creditor may apply a payment voluntarily made by the debtor without any specific appropriation, where there are two or more debts, to which ever debt he pleases. 30 Cyc. 1233, 1235.

*Cowan & Adamson* and *H. S. Blood,* for respondent.

The goods were not charged on plaintiff's books to defendant, nor delivered to her, but to another. The delivery of the goods and the charging to another show that plaintiff did not extend the credit to defendant, or transact the business with her. Harris v. Frank, 81 Cal. 280, 22 Pac. 856; Langdon v. Richardson, 58 Iowa, 610, 12 N. W. 622; 20 Cyc. 181, and cases cited.

Any undertaking on the part of defendant to pay for the goods, under such circumstances, would be collateral and within the statute of frauds, and would have to be in writing. 20 Cyc. 181, and cases cited; Code, § 5888, subd. 2.

Every general partner is liable to third persons for all the obligations of the partnership jointly with his copartners.

Under the common law all partners, at the time of the contract by and on behalf of the partnership, must be joined as defendants. 15 Enc. Pl. & Pr. 868, and cases cited.

"The great weight of authority is to the effect that the facts consti-

tuting an estoppel *in pais,* to be available, except in a few cases, must be specially pleaded." 8 Enc. Pl. & Pr. 7 and cases cited; Parliman v. Young, 2 Dak. 184, 4 N. W. 139, 711.

"Should not estoppels in all cases be pleaded, that the opposite party may know what he has to meet before the case is submitted to the jury?" Taylor v. Patton, 160 Ind. 4, 66 N. E. 91; Union Street R. Co. v. First Nat. Bank, 42 Or. 606, 72 Pac. 586, 73 Pac. 341; Nebraska Mortg. Loan Co. v. Van Kloster, 42 Neb. 746, 60 N. W. 1017.

Estoppel should be pleaded. Homberger v. Alexander, 11 Utah, 363, 40 Pac. 261.

"Agency cannot be proved by the declarations of the agent, and no agency had been shown when the ruling was made." Q. W. Loverin-Browne Co. v. Bank of Buffalo, 7 N. D. 569, 75 N. W. 923; Gordon v. Vermont Loan & T. Co. 6 N. D. 454, 71 N. W. 556; Davis v. Henderson, 20 Wis. 521.

Goss, J. The complaint contains two causes of action for goods sold and delivered on account by plaintiff to defendant. The first was for goods sold to her between November 15, 1913, and February 16, 1914, of the agreed value of $508.83, and delivered at a place known as Otto's restaurant in Devil's Lake. The second cause of action was for goods sold to her of the agreed value of $172.71, delivered at a place known as Otto's bakery, between February 26th and March 26th, 1914. The answer is a general denial. Defendant, Loretta Chiostri, was the wife of Otto Chiostri. He died March 31, 1914. For seven years the restaurant had been operated under the name of Otto's restaurant, and for a year or two before Otto's death, the bakery was operated at "Otto's Bakery." One Arturo Andrei had for some years been interested as a partner in the restaurant, which was conducted in the firm name of "Chiostri & Andrei." He sold out about December 1st, 1913. Andrei never had any interest in the bakery. After Otto's death plaintiff sued his widow, the defendant, on these two accounts. From December 1st, when Andrei withdrew, the restaurant was operated until after Otto's death. The bakery was also running. The basic question of fact is as to who owned these places of business during that time; *i. e.,* whether they belonged to Otto or to his wife. He is dead. Plaintiff would hold her as the owner, with Otto as her managing agent. She denies owner-

ship or any interest in them at that or any other time. The trial court found for her by directing a verdict of dismissal at the close of the case. Plaintiff appeals. The facts are much in dispute. The testimony has been closely examined, and portions of it, where the contentions in the briefs conflict, will be given.

Defendant testifies that her husband ran the business during the seven years, and for several years was associated with Andrei. She was then asked:

Q. You know, do you not, Mrs. Chiostri, that the business was run under the name of 'L. Chiostri & Andrei?'

A. I couldn't help but see that it was.

Also:

I see letters coming under that heading, but I wasn't allowed to open his mail. I never opened his mail.

Q. You knew, did you not, that Andrei and your husband were using the name 'L. Chiostri & Andrei' in that business?

A. Yes, sir.

Q. And that was true, was it not, during the period from November 15, 1913, to March 26th, 1914, i. e., up until the time he died, practically?

A. Why, I knew nothing further than he used my name right through.

Question by Mr. Cowan: In what?

A. Why, in signing checks.

She could not tell when Andrei left Devil's Lake, but "I certainly do remember of hearing that he had dissolved partnership with Mr. Chiostri." "It was some time in December," 1913. She knew nothing about a bill of sale having been executed by Andrei to her. She knew that her husband was keeping the bank account in her name and checking upon it, and knew the bank it was in. He did not consult her about it, or did she know any of the details of the business other than that payments were made by checks on the account in her name in the bank. She cannot tell the date when this began, but presumes it was "from the time he undertook to use my name." "I said one time I wanted to know why he used my name, and he said, 'Well, he had reasons of

his own and that it was his business, and that I shouldn't interfere in the business in any way.' "  "That was about five years ago."   She was asked whether she knew her husband had transferred his business to her name and operated it under that name to avoid paying his creditors, and replied, "I couldn't say for sure that that was his reason."   Her husband did not tell her that such was the fact.   She was then asked: "You know he had had trouble before he came there, did you not?   A.  I knew he had had trouble, yes sir."   She had not talked over the trouble with him.

Q.  Did you ever say anything to him except for that one time about his using your name?

A.  That was about the only time that I put in any objections that I thought he ought to use his own name and not bring me into any trouble.

Q.  You were afraid it might get you into trouble?

A.  Why, I didn't know whether it would or not, but I figured it might.   He was in trouble at the time.  .  .  .   He went into the Aberdeen hotel business four years ago; didn't know he had rented the hotel or gone into the hotel business until after he had done it, but knew it shortly afterwards.

Q.  And you knew that he used your name, did you not?

A.  Yes, sir.

Q.  And you say you didn't know anything about the bill of sale by Andrei to you?

A.  It was not until after he died.   Not until after Mr. Chiostri died.

The cancelled checks or vouchers from the bank were not returned to her.   She had never had any active part in handling the business in either place.

Q.  You knew he was using your name in buying goods from different people?

A.  Yes, sir.

Q.  You never made any objection to it, did you?

A.  Yes, sir.

Q. Those people from whom he was buying goods?

A. No, sir, because I never knew who he was buying from; that is, I knew of some.

Q. You never took any pains to inquire?

A. No, sir.

Q. Didn't you think it might get you into some trouble, his buying goods from different people, using your name?

A. No, sir; I never did.

Q. Did you know that Otto was buying any goods or doing any business with the Lake Grocery Company?

A. Yes. That was before this account began that was sued on.

Q. And you knew then the Lake Grocery Company were carrying his account with Otto's restaurant and Otto's bakery, did you?

A. Why, just the same as the other business houses, I presume.

Q. Did you ever take any pains to tell the Lake Grocery Company that you were not responsible for that account?

A. No, sir.

Q. And yet you knew your name was being used right along, did you not?

A. The only thing I know is my name was used in signing the checks, and how the account stood I couldn't say, because I never attended to any of the business or looked at any of his bills.

Q. State whether or not, when Andrei dropped out of the business, you knew that your husband, Otto, was using your name alone?

A. No, sir. I couldn't say I did know; I know he signed the checks as Loretta Chiostri, but as to the business, I don't know.

She never signed a note to settle any accounts or gave any checks herself in payment of accounts, except just before Otto's death, at his order to her and to the bank she had signed some checks to the plaintiff in payment of bills for goods sold these two business places; that the account in her name in the bank was checked upon with the signature "Loretta Chiostri, by O.," the initial standing for Otto; and during this time before his death she had for these purposes checked upon it, adding underneath her name her initial "L." Printed upon the checks across the end were the words "Loretta Chiostri, Restaurant and Bakery," and at the bottom of the checks were printed the words

"Loretta Chiostri, by ————." When a check was signed this blank was filled in "Loretta Chiostri, by O.," meaning Otto. Another check, in usual form, without such indorsements, bearing date of May 14, 1913, to plaintiff, for $50, signed by "Loretta Chiostri, by L.," and on a different blank form, is in evidence. This check witness explains was given by her at a time when Otto was sick with erysipelas, and also was given at his order. She testifies: "I signed no checks for the Lake Grocery Company only while he was sick with erysipelas, until after he died. Took no active part in the business." She was asked: "Q. Didn't you frequently use to call up the Lake Grocery Company and order goods? A. Yes. sir." But whether these were goods for the two places of business in question does not appear, except later, in defendant's main case, she denies ever ordering any goods for said places of business. When her husband died he had no property in his name that she knew of. He had on his death $8,000 life insurance, which went to her as beneficiary. In her defense she testified that she had never before seen the bill of sale purporting to run from Andrei to her for his interest in said restaurant business, and stipulating that she would assume all the debts and liabilities, and that possession of the property was delivered to her as of date of December 1, 1913, and signed by Andrei and witnessed by her husband and another party, and which had been filed in the register of deeds' office December 5, 1913, according to the certified copy thereof offered in evidence, but not received. She testifies that she never had any property except her own personal belongings, as clothing and the like; that she had not authorized her husband to buy goods on credit for her, or known of the same being done, or known that she was in partnership with Andrei. That she had never bought any of the goods in Otto's restaurant or in Otto's bakery, or agreed to pay for any, or authorized any purchase on her account or credit for either place, nor had she ever been in either of the two places to take charge of anything until after he died, or to order anything from either place or for either place. That no claim had ever been made of her that the goods sold on account were charged against her or that she was liable for them until some time in September after her husband's death in March. That the only knowledge she had that accounts were run in her name came from a letter addressed to her that she had opened some years before, and that she had inquired of

her husband what it meant, and he said "that was his business and I was not to interfere with it."

Q. You stated that you did know that he kept his bank account in your name?

A. Yes, sir.

Q. And signed his checks in your name "by O." or by some designation of himself?

A. Yes, sir.

Q. Did you know of him doing anything else in connection with his business except that, in your name?

A. No.

She never put a dollar into that bank account and never drew upon it, except at the times stated, and at one other time, when, with his consent, she drew a check for $4.80 for charity. "I did know that he signed the checks 'Loretta Chiostri,' and that he did so when drawing checks for partnership business."

She was asked:

Q. You know he signed 'Loretta Chiostri,' but did you know he ever signed your name in drawing on the bank account, together with Andrei's name?

A. Yes, sir.

That, when testifying that the business was run under the name of "Loretta Chiostri & Andrei" she had meant "the checks was done that way, but so far as buying anything, or anything like that, I don't know whether it was put in that way or not." That her knowledge was limited to the way the bank account was handled. This fairly illustrates and condenses the proof of the respective parties, except as to that offered by the plaintiff as to its manner of making sales and its method of bookkeeping and the charge made in its books as to these accounts. It had done business with the restaurant for years. At every order for goods a sales slip was made and the party in charge of the restaurant, usually Otto, receipted thereon for the goods delivered. These orders, taken during the period from November, 1913, to March, 1914, are in

evidence. From these slips the ledger account was compiled by merely adding to the old running accounts against the partnership and the bakery. The ledger account was carried in the name of "Chiostri & Andrei" as to the restaurant, and "Chiostri Bakery" as to the bakery. The ledger account, as so kept for years, as simply added to from the slips, and opposite each item as charged the amount due as carried forward was shown under the word "balance." A continuous running account is shown, with the balance due carried forward from a time long prior to the commencement of the account sued on. This is mentioned because of the emphasis placed upon it in the brief of the defendant's attorneys as tending to show that it was charged continuously against a partnership; or, as to the bakery, against persons not designated, and not against this defendant. This is but a circumstance, because, irrespective of the charges made on the books, if the places of business were owned by the defendant, and the goods delivered to those places, she must pay for them whether her ownership was known to plaintiff or not. Lindquist v. Dickson, 98 Minn. 369, 6 L.R.A. (N.S.) 729, 107 N. W. 958, 8 Ann. Cas. 1024. However, the manner of charging is important to be considered on the fact of ownership, but is for the jury exclusively. But if, on the contrary, these places were owned by her husband or the partnership, with him using her name without her consent or knowledge of it or of facts sufficient to impute knowledge thereof to her, she cannot be held, except as ostensible owner, if at all.

The plaintiff proved the delivery of the goods at these places, offered in evidence the checks bearing her name, some signed in her name as drawee by "O." and others by "L.," and which canceled checks were received. Plaintiff then offered to show that during or prior to the running of these accounts, and when plaintiff's agents were inquiring of Otto at the different places of business for the purpose of extending credit on said sales, and carrying his overdue account as to his financial circumstances, that he, Otto, stated to them in the course of said business transactions that he did not own these places of business, but that they belonged to his wife; that this information was acted upon as a basis for extending credit to said places of business, and that it had done business with him upon the assumption that he was but the agent of the owner, the defendant, and that "on one or two occasions in connection with and as a part of the contracting of this account and the

transactions between the parties in conversation with the agents of the plaintiff over extension of credit, Otto stated to them that they were perfectly safe in extending this credit as he had six or eight thousand dollars worth of insurance which they could rely upon as taking care of the indebtedness in case of his death; that they did rely upon said statement; that said insurance was payable to her, defendant." Plaintiff also offered in evidence a bill of sale, heretofore described, of Andrei to her. In connection with this the following appears in the record: Mr. Cowan: "Defendant does not make any question but that the signature 'Arturo Andrei' on exhibit 80 (bill of sale) is the signature of Arturo Andrei and purports to be the same." Mr. Hunt: "Is there any question made but that the 'Arturo Andrei' that signed the instrument is the Andrei whose name has been brought into this case as being associated with Mr. Chiostri in Otto's restaurant?" Mr. Cowan: "No." All of this proof was offered both by question and by offers of proof, but was excluded, except the court permitted the witness to testify that Otto had said that he did not own these places of business, but struck from the record the statement coupled therewith that his wife, this defendant, owned them. If the exclusion of this testimony was error, it was certainly prejudicial.

Taking up first the admissibility of the bill of sale. Its exclusion was error. While it may have been hearsay or not as to the defendant, according as the jury might determine the fact of her interest and knowledge of the bill of sale, yet a sufficient basis under all the circumstances shown to exist had been laid for its admission as proof of an independent fact, i. e., that it had been given and placed of record even though delivered by Andrei to Otto with defendant in utter ignorance of it, as she claims to have been, until after Otto's death. Like proof, the running of the restaurant, admissible as an independent fact in the case, whoever owned it, proof of the bill of sale is admissible as a fact and circumstance bearing upon the situation. Whether the bill of sale conveyed title to the defendant or merely to Otto, using her name as a dummy owner, would be for the jury's determination as a fact to be found under the claims of the respective parties and under proper instructions.

As to the statements of Otto that he did not own the business, but that the restaurant and bakery belonged to his wife, its admissibility

depends upon the state of the proof at the time it was offered. Proof of the fact of agency cannot be established by the statements of the agent to third persons. But when the record discloses substantial proof of agency amounting to prima facie proof of it without considering denials by the alleged principal, or, in other words, sufficient proof is made to sustain a verdict or finding of the existence of an agency, independent of said statements, a basis is laid for their receipt under proper instructions. "The correct rule is this: if there is no proof whatever tending to prove the agency, the act may be excluded from the jury by the court. But if there is any evidence tending to prove the authority of the agent, then the act cannot be excluded from them, for they are the judges of the sufficiency and weight of the testimony." McClung v. Spotswood, 19 Ala. 165–170, quoted and applied in South & North Ala. R. Co. v. Henlein, 52 Ala. 606, 23 Am. Rep. 578, where the following from page 611 is found applicable to defendant's denials of interest. "It [certain testimony] was contradictory of the fact that the person to whom the offer was made was the agent of the appellees; but the fact that evidence is in conflict with or contradictory of other evidence is not involved in an inquiry as to its admissibility. Its credibility and sufficiency is affected by such conflict or contradiction, and there the duty of the jury intervenes to determine the weight it should receive in view of the conflict." "After the party alleging the agency has made a prima facie case of agency against the principal, any declarations made by the agent in the prosecution of and relative to the business contemplated by such agency are admissible against the principal." Peck v. Ritchey, 66 Mo. 114, 118. Also Francis v. Edwards, 77 N. C. 271. Acts of an alleged agent pertaining to the business of the agency, as well as his declaration that he is acting as agent, are competent evidence against the principal when there is independent evidence tending to prove the agency." Werth v. Ollis, 61 Mo. App. 401.

The following, from page 208, vol. 1 of the 2d edition of Mechem on Agency, after declaring the general rule as to inadmissibility of statements and acts of agent as proof of agency, contains the following: "His [alleged agents] acts and statements cannot be made use of against the principal until the fact of the agency has been shown by other evidence." Under the note, citing many cases, is found the following: "What is meant by showing by other evidence.—When it is said

that the agent's statements, admissions, and declarations cannot be made use of until the fact of his agency has been shown by other evidence, it is, of course, not meant that there must be a separate verdict found establishing that fact; what is meant is that there must first be some competent testimony offered tending to prove the fact." And under the same note on the succeeding page is found: "It is said in several cases that after other evidence of agency has been offered, the agent's statements may then be used in corroboration . . . or may be received for the purpose of showing what induced the other party to deal with the agent." These notes cite many cases sustaining them. "An agency, like any other fact, may be proved by circumstances and the conduct of the parties and the relation that had previously existed between them. Whenever there is independent evidence tending to prove an agency, it is competent to prove all the acts of the alleged agent pertaining to the business as well as his declarations that he was acting as agent in the particular transaction." 2 Jones, Ev. § 256. This court has held to the same effect in Grant County State Bank v. Northwestern Land Co. 28 N. D. 479, at 503, 150 N. W. 736, where it is stated: "It will be noticed that the statement made by Jones was not that he was an agent of the company, or authorized by it to issue this paper. Short v. Northern P. Elevator Co. 1 N. D. 159 at 163, 45 N. W. 706. Instead, it is a declaration of independent facts 'not including the terms of his authority, but upon which his right to use his authority depends,' and which this agent, his vice presidency, directorship, and charge of defendant's offices having been shown, had authority to make under the express provisions of § 5772, Rev. Codes 1905, Comp. Laws 1913, § 6340. Such is the law independent of statute. Mechem, Agency, §§ 714, 715; Clark & S. Agency, §§ 466, 467; North River Bank v. Aymar, 3 Hill, 262, at page 266."

These offers were all renewed toward the close of the trial, when all the facts bearing upon ownership had been brought out, and after the defendant had testified to her knowledge of the situation, so far as she knew it,—after proof had been made of the way the bank account was carried in her name for the firm, and drawn upon in her name to pay firm debts, and her knowledge of it for years; her fears that it might get her into trouble with creditors; after proof of knowledge of facts

at least sufficient to put her upon inquiry as to how far her husband had used her name in business transactions and how far he was incurring liability purporting to bind her, and her neglect to ascertain these facts. That she had drawn checks upon that bank account in payment of the plaintiff, and knew that these places of business were being furnished goods upon account by plaintiff and others. That she knew the partnership had been terminated; that she had some reason to believe that her husband had used her name as a member of that firm, and that to avoid payment of his debts, is apparent from her own testimony and admissions, or, at least, is sufficient to warrant a jury finding such to have been the fact. Another fact is the relationship of the parties,— a strong circumstance, under her own admissions, as to knowledge, and under her denials of matters surrounding her for years from which a strong inference could always exist that she was interested in the business from the use of her name in the firm bank account and on checks drawn upon it. She stands in the same position in law as though she was not related to the deceased, yet it is a circumstance to be considered that the relationship made it much easier for ambiguous transactions to be conducted as they were. That title ostensibly came to her of the partner's interest when he retired, and that the bill of sale was filed to proclaim that fact and operate as constructive notice of it to the world is a circumstance notwithstanding her denials of knowledge of it,—a matter for the jury to pass upon. These are circumstances that may or may not be considered prima facie proof of ownership in defendant, according as the jury should determine. No appellate court would, under this proof, set aside a finding of ownership in defendant. Hence, all these facts are a sufficient setting for the proffered testimony of the statement of the husband, made under the circumstances, and it should have been received. Likewise should his statements have been admitted concerning life insurance, also made in a business transaction to obtain credit, and a circumstance bearing upon the plaintiff's contention that defendant was the real owner.

An objection was taken to the statements of the husband and to the offer of proof of them on the ground that he was dead, and that the transactions were inadmissible as within the bar of subd. 2 of· § 7871, Comp. Laws, 1913. This action is not against any party within the purview of the statute, nor is a judgment sought against any such party.

The statements of the husband, as managing agent for the wife's property, as contended by the plaintiff, are on no different footing as to admissibility than would have been those of Andrei had he, instead, been such managing agent. This statute has no application.

Appellant has also briefed the question of ostensible agency, based upon an assumed ownership in the defendant with the husband as her managing agent. It is unnecessary to consider that question. If the defendant was the owner, either actually or ostensibly, she is liable. If she knowingly permitted herself to be held out as owner, she is precluded from denying ownership to defeat the claims of creditors, who became such in reliance upon her ostensible ownership. And this is true independent of any acts or statements of herself to the creditor. And this is in no sense a creation of liability by estoppel, as might arise upon any representations she made or any acts done by her, causing dealers to advance credit to the business in reliance upon such acts or representations. For an estoppel to arise there must be such a basis therefor. But for a liability to accrue from her to creditors parting with goods upon an ostensible ownership in her of the business, the liability is based upon the holding out by her of herself as owner, whether in person or by agent, if knowingly done, and is independent of and entirely distinct from liability through estoppel. This is thoroughly discussed in Grant County State Bank v. Northwestern Land Co. 28 N. D. 479, at page 508, 150 N. W. 736 et seq. What is there said is unnecessary to be repeated. Perhaps on a .retrial of this case that issue should be submitted under proper instructions, as well as any question of estoppel; or, as it is sometimes termed, agency by estoppel, should the issue of ownership also be submitted.

Defendant would avoid the effect of any error in the exclusion of testimony under the claim that the proof shows that the goods were sold to the partnership, and that the charges were made against the partnership in order to hold Andrei responsible, and that no claim was made against defendant until long after Otto's death; all tending to disprove any claim of liability as for goods sold to her. This has a bearing upon any claim of ostensible ownership and might defeat, under certain circumstances, a recovery on that ground. But if the defendant was in fact the true owner, she could be held as having contracted with defendant as purchaser of the goods, even though at the time of the sale

34 N. D.—26.

plaintiff believed it was selling the goods to the person in charge of the place of business, and made charges accordingly upon its books. Lindquist v. Dickson, 6 L.R.A. (N.S.) 729, and note, 98 Minn. 369, 107 N. W. 958.

As to those sales made to the partnership during the life of the partnership, plaintiff cannot recover upon its complaint as for goods sold to the defendant. Any liability for the partnership debt must be claimed as such or as assumed, and must be proven accordingly to warrant a recovery.

In the application of this holding as precedent, it may be well to remark that this is not a proceeding directed at the property, or to follow it and subject it to the seller's claim. It is an action to recover a debt for goods sold and delivered. The rules announced in Wipperman Mercantile Co. v. Robbins, 23 N. D. 208, 135 N. W. 785, Ann. Cas. 1914D, 682, as to declaration and statements of the party in possession, do not apply to the declarations of the husband here offered, for the reason that he is not a party in interest and his statements cannot be considered as against interest. In the language of § 1458 of Wigmore on Evidence: "But they could not be received to prove the matter as to which they were not against interest." If it was to charge the property, Wipperman Mercantile Co. v. Robbins, supra, might be precedent.

One other matter needs mention. Defendant contends that all goods delivered after dissolution of the partnership have been paid for because of payments made during the period of delivery. This involves application of payments. The plaintiff would have the right to apply said items upon the running account, in the absence of notice, where the payments were made upon a continuous and running account with a considerable balance always owing. The payments were made to apply upon the account of the place of business under the proof, with no direction other than that as to application.

As heretofore stated, the verdict was directed. Respondent argues "that plaintiff is not entitled to a reversal unless the ruling is against the fair preponderance of the evidence, because, in directing the verdict, the court stated that 'if there is any question of fact left in the case, I resolve that in her favor.'" The verdict was directed after motions for directed verdict had been made by both parties. But respondent's contention omits to consider that evidence which should have been

received, bearing strongly upon the questions of ownership and agency, had been rejected. Therefore, had the trial court made findings upon the proof received, it would have made its findings upon only a portion of the competent proof offered. It was in the same position as the jury would have been in passing upon the same matters under the same proof. The important fact remains that a decision has been made, based upon only a portion of the competent and material proof offered, when it should have been only after consideration of all of it. This is true whether the judgment be taken as entered upon the verdict, or as entered upon the equivalent of findings and conclusions. Whatever the basis for the judgment, it is upon only a portion of the admissible evidence offered. Had findings been made, the judgment nevertheless should be reversed for error in the exclusion of testimony. As there was sufficient evidence to authorize submission to the jury of the issues of fact, it was error to direct the verdict for the defendant. This passes upon all assignments and questions raised necessary of decision. For errors in the exclusion of testimony, a new trial is granted. It is so ordered.