FRANK RIGLER, Doing Business as Wishek Cash Store, Respondent, v. NORTH DAKOTA CONSTRUCTION COMPANY, a Domestic Corporation, and Federal Surety Company, a Corporation of Davenport, Iowa. FEDERAL SURETY COMPANY, a Corporation of Davenport, Iowa, Appellant.

(220 N. W. 441.)

38

Opinion filed July 3, 1928.

*F. J. Graham* and *Sterling, Clark & Grigsby;* for appellant.

*I. A. Mackoff* and *H. P. Remington,* for respondent.

Burr, J. This action was brought against both defendants, apparently on the theory that the goods and services involved were furnished to the North Dakota Construction Company, a corporation, in furtherance of the construction of a highway in McIntosh county known as federal aid project 254-A, under contract with the North Dakota Highway Commission and with McIntosh county, the other defendant being surety on the contract. At the trial of the case it was the contention of the plaintiff that the goods and services were furnished directly to the Federal Surety Company and the charge of the trial

court says: "The object of the action is to recover the value of certain articles and for labor alleged to have been furnished by the plaintiff, or certain assignees of his, to the Federal Surety Company."

In his brief in this court the plaintiff says:

"None of the articles furnished, . . . are such that the defendant would be obliged to pay them under the terms of its bond."

In other words the plaintiff seeks to recover from Federal Surety Company because he claims the goods and labor were ordered by and furnished to Federal Surety Company.

In order to recover in this case plaintiff is required to prove first, that one Tom Cline was such an agent of Federal Surety Company as had authority to bind the company; second, that the said Tom Cline authorized the furnishing of the goods and services; and third, that these goods and services were delivered as authorized.

One R. F. Odenthal was the president of the North Dakota Construction Company and the active manager in the construction of the highway. The work was commenced in the fall of 1925 and unpaid bills for labor and services had been incurred. Work was resumed in the early part of 1926 and up to the forepart of June of that year additional bills for labor and services were incurred. This was the situation on or about the tenth day of June, 1926, when Tom Cline appears on the scene.

The only evidence introduced to prove the agency of Tom Cline is the fact that on or about the tenth of June, 1926, Federal Surety Company wired to a bank: "Will honor draft twelve hundred fifty nine drawn by Cline;" on August 10, 1926, answered by letter plaintiff's inquiry regarding an account other than the one in dispute as follows:

"Re North Dakota Construction Company. Your letter July 19th regarding claim you have against the above. *Our Mr. Cline,* who was in your city sometime ago, advises that he explained to you carefully that we could not consider any past accounts until this project was completed, accepted, and paid for by the state;"—and that the Federal Surety Company on October 12, 1926, executed a power of attorney authorizing Cline to "execute, acknowledge, justify upon and deliver any and all bonds required by the Highway Department of the state of North Dakota in final adjustment of matters pertaining to the North Dakota Construction Company; provided, that penal sum of any one

of the bonds is not in excess of thirty thousand dollars." This power of attorney states that "the Federal Surety Company . . . doth hereby constitute and appoint Tom Cline ·. . . to be its true and rightful attorney-in-fact in and for the state of North Dakota for the following purposes to wit,"—and then proceeds to authorize him to execute bonds and it also contains this express provision, that this power of attorney does not authorize or empower, "the said attorney-in-fact to give consent . . . to any alterations, or changes, in the form or conditions of any contract, on which this company is surety, nor to bind, or in any way commit the said Federal Surety Company to any course or decision whatever regarding adjustment of claims or complaints that may be made thereunder, or in connection with any Bond which may be executed by said Company."

Cline used the proceeds of the draft to pay off some of the accounts already incurred by Odenthal in the course of his work under his contract, the accounts being such as the defendant Surety Company was supposed to be liable for under its bond.

The accounts sued upon were furnished between the tenth day of June, 1926, and the 25th day of August, 1926, to R. D. Odenthal and several others who were said to be his employees and after Cline had paid the old accounts. The evidence shows that the North Dakota Construction Company had two projects under course of construction but the Federal Surety Company was the surety on the contract for but one of these. Upon the trial of the case judgment was rendered in favor of the plaintiff and from the order denying the motion for judgment notwithstanding the verdict or for a new trial defendant appeals.

It is the claim of the defendant that there is no proof of such agency of Tom Cline as to justify the belief he was general agent for the surety company and had power to bind them for the goods and labor furnished; second, that there is not sufficient proof to show that such goods and services were furnished. It is well settled that agency cannot be proved by declarations of the agent. See Bratton v. Hoerr, 49 N. D. 719, 193 N. W. 308; Gordon v. Vermont Loan & T. Co. 6 N. D. 454, 71 N. W. 556. The plaintiff says that the cashing of the draft, the letter quoted, and the power of attorney referred to are sufficient to show that Tom Cline was the general agent of Federal Surety Com-

pany and then offers proof of statements and declarations of Tom Cline indicating the ordering of the goods and services.

Plaintiff relies upon actual and ostensible authority given to an actual agent. It is the law of this state. that "an agent has such authority as the principal actually or ostensibly confers upon him." Code 1913, § 6336. The acts of the alleged agent cannot be used to establish the agency "in the absence of evidence tending to show the principal's knowledge of such acts, or assent to them." 21 R. C. L. 821. It is true that after agency has been prima facie established, independent of the declarations of the agent, his statements, declarations, and proof of his acts may be introduced to bind his principal, if they are within his actual or ostensible authority. See Lake Grocery Co. v. Chiostri, 34 N. D. 386, 158 N. W. 998. There is no evidence showing that Federal Surety Company authorized Tom Cline to do more than pay some accounts incurred by Odenthal and execute a bond to the Highway Department and even in this latter employment his authority is limited carefully. For these purposes he was "Our Mr. Cline" mentioned in the letter.

The plaintiff proved that Tom Cline said: he was acting for the surety company; that the surety company had taken over the road; had hired Odenthal to complete it, and that goods were to be furnished to Odenthal for this purpose. This would be sufficient to establish liability on the part of the company if the required agency had been proved.

The evidence is vague in regard to the persons receiving the goods and services. The evidence does show Odenthal received some in person but the plaintiff also shows he furnished part of the goods to others who said they were working for Odenthal and there is failure of proof to show that the goods sought to be recovered were all furnished Odenthal for this one project Federal Aid Project 254-A, and not for the other project the North Dakota Construction Company had.

We think the court was in error in denying the motion for new trial made by the defendant. It is possible plaintiff may be able to show general agency on the part of Cline to take over the project and superintend it and also be able to show that all of the goods and services claimed were furnished to Federal Surety Company. Owing to the weakness and vagueness of the evidence in the particulars pointed out we think

the ends of justice are better served by granting a new trial. The judgment therefore will be reversed and a new trial ordered.

NUESSLE, Ch. J., and BURKE, BIRDZELL, and CHRISTIANSON, JJ., concur.